LUANNE SACKS, Cal. Bar No. 120811
JOHN R. HURLEY, Cal. Bar No. 203641
DLA PIPER US LLP
153 Townsend Street, Suite 800
San Francisco, CA 94107-1957
Tel: 415.836.2500
Fax: 415.836.2501

Attorneys for Defendant
Jellycloud Inc. f/k/a Claria Corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SHARMAN NETWORKS LIMITED,<br>Plaintiff,<br>v.<br>CLARIA CORPORATION, now known as JELLYCLOUD INC. ,<br>Defendant. | CASE NO. CV 08 3527<br><br>**ANSWER AND COUNTERCLAIM** |

Defendant Claria Corporation, now known as Jellycloud, Inc. ("Jellycloud"), through its undersigned counsel, hereby answers the Complaint for Recognition of Foreign-Country Money Judgment (the "Complaint") and counterclaims against plaintiff Sharman Networks Limited ("Sharman") as follows:

**IDENTITY OF THE PARTIES**

1. Jellycloud states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and therefore denies them.

2. Jellycloud admits the allegations of paragraphs 2 through 3 of the Complaint.

**JURISDICTION AND VENUE**

3. Paragraphs 4 through 6 of the Complaint set forth conclusions of law and/or legal arguments to which no answer is required. To the extent that an answer may be deemed to be

required, Jellycloud admits that jurisdiction is proper in this Court and venue is proper in the United States District Court for the Northern District of California, and otherwise denies the allegations therein.

**INTRADISTRICT ASSIGNMENT**

4. Paragraph 7 of the Complaint sets forth conclusions of law and/or legal arguments to which no answer is required. To the extent that an answer may be deemed to be required, Jellycloud admits that assignment of the action to the San Francisco Division is proper and that Jellycloud's principal place of business is located in Redwood City, California.

**FACTUAL ALLEGATIONS**

5. In response to the allegations in paragraph 8 of the Complaint, Jellycloud admits that on September 9, 2003, Sharman entered into a Distribution Agreement with GAIN Publishing Ltd. ("GAIN"), a wholly-owned subsidiary of Jellycloud, and that on September 9, 2003, Jellycloud executed a Guaranty in favor of Sharman. The allegations in paragraph 8 do not fully or accurately state the nature of Jellycloud's obligations under the Guaranty, and Jellycloud therefore denies the allegations in paragraph 8 to the extent they purport to describe the nature of Jellycloud's obligations under the Guaranty. Except as specifically admitted herein, Jellycloud denies the allegations contained in paragraph 8 of the Complaint.

6. In response to the allegations in paragraph 9 of the Complaint, Jellycloud admits that Sharman commenced arbitration proceedings against GAIN on August 12, 2005, and that an evidentiary hearing was held in London, England, in October 2006. Jellycloud specifically denies that it was represented by counsel or appeared or participated in the arbitration. Jellycloud admits that the Tribunal in the arbitration issued a Partial Final Award on January 4, 2007. The allegations in paragraph 9 do not fully or accurately set forth the holdings of the Partial Final Award, and Jellycloud therefore denies the allegations in paragraph 9 to the extent they purport to describe the holdings of the Partial Final Award. Jellycloud admits that the Tribunal in the arbitration issued a costs order and subsequent award against GAIN purporting to require GAIN to pay the sums of £1,269,682.24 and AU$12,445.60 to Sharman. Jellycloud makes no admission regarding the effect or validity of either the costs order or award. Jellycloud admits

that GAIN refused to make payment based on the costs award. Except as specifically admitted herein, Jellycloud denies the allegations contained in paragraph 9 of the Complaint.

7. Jellycloud admits the allegations in paragraph 10 of the Complaint.

8. In response to the allegations in paragraph 11 of the Complaint, Jellycloud makes no admission regarding the effect, validity or enforceability of any provision of the Guaranty. Jellycloud otherwise admits the allegations in paragraph 11 of the Complaint.

9. In response to the allegations in paragraph 12 of the Complaint, Jellycloud denies that the litigation in the English Court was "duly conducted" or that the conduct of the litigation comported with due process. Jellycloud also makes no admission regarding the validity or enforceability of any order or judgment resulting from the proceedings. Jellycloud admits that the currency-conversion calculation set forth in paragraph 12 is accurate. However, the use of the date of July 17, 2008, as the basis of the currency conversion is a legal conclusion to which no answer is required. Jellycloud also specifically denies that the currency conversion rates set forth in paragraph 12 of the Complaint are accurate statements of the conversion rates on July 17, 2008. Jellycloud otherwise admits the remaining allegations in paragraph 12 of the Complaint.

10. In response to the allegations in paragraph 13 of the Complaint, Jellycloud admits that it has not made payment on the Judgment. Jellycloud specifically denies that the Judgment is final in that the amount of attorney's fees and costs owing to Sharman is the subject of ongoing proceedings in the courts of England and that the Judgment is therefore subject to potential modification. Jellycloud makes no admission regarding the validity or enforceability of the Judgment in California or the United States, and specifically denies the same. Except as specifically admitted herein, Jellycloud denies the allegations contained in paragraph 13 of the Complaint.

## COUNTERCLAIMS

### First Counterclaim – Offset of Contractual Overpayment

11. The Distribution Agreement between Sharman and GAIN dated September 9, 2003, and as amended on or about April 4, 2004, provided for the bundling of GAIN's GAIN AdServer software with Sharman's KMD software. Pursuant to paragraph 4.2 of the Distribution

Agreement, GAIN was required to pay Sharman a "Minimum Monthly Advance" ("MMA") based on the number of times the GAIN AdServer was downloaded and installed on the personal computers of end users as a result of bundling with KMD—described as "GAIN Complete Installs" in the Distribution Agreement.

12. As determined by the Tribunal in the arbitration between Sharman and GAIN, the Distribution Agreement only required an MMA payment for the first installation of the GAIN AdServer on any given computer as a result of bundling with KMD. Sharman was not entitled to an MMA payment based on second or subsequent installations of the GAIN AdServer, such as in a case where an end user uninstalled and subsequently reinstalled the software on the same computer.

13. GAIN could not detect all reinstallations of the GAIN AdServer as reinstallations rather than initial installations, and it therefore treated some reinstallations as new installations on which MMA payments were due. As a result, GAIN made MMA payments to Sharman based on reinstallations of the GAIN AdServer that did not warrant or support such payments. Jellycloud is informed and believes that these overpayments to Sharman exceeded $1,250,000.

14. Jellycloud is entitled to assert this claim as an offset against any amounts owing to Sharman based on assignment of rights from GAIN and under the terms of the Guaranty.

**Second Counterclaim – Civil Code § 3275**

15. Jellycloud incorporates the allegations in paragraphs 11 through 14 as if fully set forth herein.

16. The Distribution Agreement between Sharman and GAIN dated September 9, 2003, and as later amended, provided for the payment by GAIN of both lump sum advances and MMAs as "pre-payment" of Revenue Share due to Sharman under the contract. At various points in time, and at rates dictated by the contractual terms, GAIN was entitled to take credits against the advances instead of making full monthly Revenue Share payments to Sharman. MMAs were also recoupable against the lump sum advances at rates dictated by the contract, thereby reducing the amount of MMAs payable to Sharman each month. The Distribution Agreement and its amendment characterize both the lump sum advances and MMAs as "non-refundable," thereby

purporting to allow Sharman to retain any unrecouped sums upon termination.

17. GAIN paid a total of $16.5 million in lump-sum advance payments to Sharman under the terms of the Distribution Agreement and its amendments. Net of recoupment, GAIN paid a total of $13,652,396 in million in MMAs to Sharman under the terms of the Distribution Agreement and its amendments. GAIN therefore made advance payments totaling $30,152,396 under the terms of the Distribution Agreement and its amendments.

18. During the course of performance of the Distribution Agreement and its amendments, GAIN took credits and recouped against the amount of these advance payments such that $22,504,676 remained unrecouped.

19. GAIN terminated the Distribution Agreement by notice to Sharman and the termination became effective on August 15, 2005.

20. Sharman has retained and has not returned the amount of the unrecouped advances paid to it by GAIN.

21. California Civil Code § 3275 provides that "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

22. The contractual provisions characterizing the lump sum advances and MMAs made to Sharman as "non-refundable" operate to impose a forfeiture or a loss in the nature of a forfeiture, and the payment of advances has fully compensated Sharman for Revenue Share and other payments due as consideration under the terms of the Distribution Agreement. GAIN is therefore entitled under the terms of Civil Code § 3275 to relief from forfeiture and return of the unrecouped amount of the advance payments made to Sharman.

23. Jellycloud is entitled to assert this claim as an offset against any amounts owing to Sharman based on assignment of rights from GAIN and under the terms of the Guaranty.

## AFFIRMATIVE DEFENSES

24. Jellycloud asserts the following separate and distinct affirmative defenses

against Sharman and alleges as follows. By asserting these affirmative defenses, Jellycloud does not adopt or assume the burden of proof or persuasion where such burden would normally rest upon Sharman:

**FIRST AFFIRMATIVE DEFENSE**

25. The Complaint and each alleged cause of action therein fail to set forth facts sufficient to constitute a cause of action against Jellycloud.

**SECOND AFFIRMATIVE DEFENSE**

26. The Judgment which Sharman seeks to enforce is not final, conclusive and enforceable.

**THIRD AFFIRMATIVE DEFENSE**

27. The Judgment which Sharman seeks to enforce is based on and would impose a penalty upon Jellycloud and it is not entitled to recognition and enforcement by this Court.

**FOURTH AFFIRMATIVE DEFENSE**

28. The Judgment which Sharman seeks to enforce was obtained by fraud that deprived Jellycloud of an adequate opportunity to present its case.

a. As alleged in paragraphs 11-14, above, the Distribution Agreement between Sharman and GAIN dated September 9, 2003, and as later amended required GAIN to make payment on MMAs based on the first installation of the GAIN AdServer on any given computer as a result of bundling with Sharman's KMD software, but Sharman was not entitled to an MMA payment based on second or subsequent installations of the GAIN AdServer. Also as alleged in paragraphs 11-14, above, GAIN could not detect all reinstallations of the GAIN AdServer as reinstallations, and it therefore treated some reinstallations as new installations and overpaid MMAs to Sharman.

b. During the course of the underlying arbitration, GAIN sought discovery of

documents from Sharman of its records of downloads and installations of the GAIN AdServer and/or Sharman's own KMD software so that the amount of such overpayment could be calculated. Sharman resisted this discovery by stating that it did not have records or access to records of such downloads or installations. Among other things, in written oppositions to a motion by GAIN to compel production of such records and in oral statements through its counsel at a hearing on July 7, 2006, Sharman denied that it had access to information collected by an entity called AltNet, which also bundled software for distribution with Sharman's KMD software.

c. Sharman's statements regarding lack of access to download and installation information held by AltNet were false when made. The terms of a Joint Enterprise Agreement between Sharman and AltNet specifically gave Sharman the right to access AltNet's records.

d. The Tribunal in the underlying arbitration relied on Sharman's false and fraudulent statements in issuing its Second Procedural Order dated July 27, 2006, in which it held that Sharman was not required to produce records or information belonging to AltNet. As a result, GAIN was unable to obtain information necessary to quantify and assert a claim for offset or overpayment in the underlying arbitration, and Jellycloud was thereby denied the ability to assert a defense of offset or overpayment in the resulting English Litigation.

**FIFTH AFFIRMATIVE DEFENSE**

29. The Judgment which Sharman seeks to enforce and/or the cause of action or claim for relief upon which the judgment is based is repugnant to the public policy of the State of California or of the United States. Among other things:

a. The Judgment gives effect to and upholds contractual provisions that impose an unlawful penalty or forfeiture in violation of Civil Code § 3275;

b. The Judgment has the effect of rewarding Sharman for conduct that is illegal under the laws of the State of California in that it upholds an arbitral determination that Sharman was entitled to continuing contractual payments notwithstanding a practice of causing the GAIN AdServer to be automatically reinstalled on the computers of end users who removed the software, which practice violated § 22947.2(c) of the California Business & Professions Code.

c. The Judgment awards attorney fees on contractual claims notwithstanding that such claims have not been finally determined and in an amount that is disproportionate to the amount of any liability that might ultimately be found under the contract.

**SEVENTH AFFIRMATIVE DEFENSE**

30. The proceedings leading to the Judgment were not compatible with the requirements of due process of law.

**EIGHTH AFFIRMATIVE DEFENSE**

31. Sharman's recovery of the amounts sought pursuant to the Judgment is barred, in whole or in part, by offset of the amounts owing to Jellycloud as a result of its counterclaims.

**NINTH AFFIRMATIVE DEFENSE**

32. Sharman's recovery of the amounts sought pursuant to the Judgment is barred, in whole or in part, by the equitable doctrines of unjust enrichment and/or unclean hands.

**TENTH AFFIRMATIVE DEFENSE**

33. The Judgment is the result of initial proceedings in a larger dispute, and further proceedings could result in a monetary award or a net of monetary awards against Sharman that would serve as an offset against the Judgment. Because of Sharman's residence in Vanuatu, which is not a signatory to any treaty for recognition of foreign judgments or arbitration awards, Jellycloud would have no recourse to recover or assert the amount of such an offset if the Judgment is immediately recognized by this Court. The Court should therefore exercise its

discretion to stay this action pending resolution of the entirety of the dispute.

**ELEVENTH AFFIRMATIVE DEFENSE**

34. Jellycloud presently has insufficient knowledge or information upon which to form a belief whether it may have additional, yet unstated, affirmative defenses. Jellycloud reserves the right to assert additional affirmative defenses in the event discovery indicates that additional affirmative defenses are appropriate.

**WHEREFORE,** Jellycloud prays for judgment as follows:

1. That Sharman takes nothing by way of the Complaint;
2. For dismissal of the Complaint with prejudice;
3. For an award of damages and judgment in favor of Jellycloud on its counterclaims according to proof;
4. For costs of suit herein;
5. For its reasonable attorney fees incurred herein; and
6. For such other and further relief as this Court deems just and proper.

Dated: August 12, 2008

DLA PIPER US LLP

By [signature]
JOHN R. HURLEY
Attorneys for Defendant
Jellycloud Inc. f/k/a Claria Corporation